ELOY A. PERAL (pending *pro hac vice* admission)
**WINDELS MARX LANE & MITTENDORF, LLP**
156 West 56th Street
New York, NY 10019
Telephone:  212-237-1000
Email:  eperal@windelsmarx.com


KENNETH M. WEINFIELD (SBN 116560)
**CHAUVEL & GLATT, LLP**
66 Bovet Road, Suite 280
San Mateo, CA  94402
Telephone:  650-573-9500
Email:  ken@chauvellaw.com

Attorneys for Plaintiff ULTRA PURE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ULTRA PURE, LLC, a Connecticut limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>QUINTUM CELLARS LLC, D/B/A PRECISION WINE COMPANY, a California limited liability company,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR BREACH OF CONTRACT**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ultra Pure, LLC ("**Plaintiff**" or "**UP**"), for its Complaint against Quintum Cellars LLC d/b/a Precision Wine Company ("**Defendant**" or "**Precision Wine**"), states as follows:

**PARTIES**

1. Plaintiff is a Connecticut limited liability company with a principal place of business located at 50 Old Kings Highway, Darien, Connecticut 06820.

2. Plaintiff is the largest family owned supplier of high quality bulk alcohol in the United States serving the beverage and industrial industries.

3. Defendant is a California limited liability company with a principal place of business located at 1241 Adams Street # 1028, Saint Helena, California 94574 and, upon information and belief, may be served by its registered agent, Paul Peng Wang, at 14 Landport, Newport Beach, California 92660.

4. Precision Wines is a Napa Valley based producer of wines.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this action involves (a) citizens of different States and (b) the amount in controversy exceeds $75,000.

6. Plaintiff and Defendant are limited liability companies so their citizenship for purposes of 28 U.S.C. § 1332 is determined by the citizenship of its members.

7. Plaintiff is a citizen of Connecticut because its members – Sanihill Inc., a Connecticut corporation, and Orchard Place LLC, a Connecticut limited liability company – are citizens of Connecticut. The sole member of Orchard Place LLC is not a citizen of California.

8. Defendant is a citizen of California because, upon information and belief, its members – Trevor Sheehan and Paul Peng Wang – reside in California.

9. This Court has personal jurisdiction over Defendant because, on information and belief, Defendant engages in substantial, systemic, and continuous contacts in California.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(3).

## FACTUAL BACKGROUND

11. In a Bulk Sales Agreement (the "**Original Agreement**") effective as of April 6, 2021, Defendant agreed to purchase from Plaintiff 300 barrels each year for production years 2022, 2023, and

2024 of bourbon whiskey conforming to specifications set forth in the agreement to be produced by Green River Distilling ("**Green River**") located in Owensboro Kentucky.[1]

12.   In the Original Agreement, Defendant agreed to pay $975 per barrel for all production years. As set forth in Section A annexed to the Original Agreement, for each production year, a 10 percent deposit was due by January 31 of the preceding year, 50 percent of the payment was due 30 days prior to filling (*i.e.*, when the barrels were ready for delivery), and the balance was due upon filling.

13.   The Original Agreement states that it "shall be governed by and construed in accordance with the laws of the State of Connecticut applicable to contracts made and performed wholly therein without regard to any conflict of laws principles." (BSA, ¶ 7.)

14.   In the Original Agreement, Precision Wine "acknowledge[d] their binding commitment" to purchase the bourbon whisky it ordered pursuant to the Original Agreement. (BSA, ¶ 1.) The Original Agreement did not give Precision Wine a right to terminate the Original Agreement or cancel its order for any of the production years.

15.   On or about December 23, 2022, Precision Wine and UP executed an amendment to the Original Agreement modifying the production schedule and pricing for the bourbon whiskey ordered by Precision Wine for production years 2023 and 2024 (the "**Amendment**," together with the Original Agreement, the "**Agreement**"). For production years 2023 and 2024, a 10 percent non-refundable prepayment was due by January 31 of the preceding year and 90 percent of the balance was due four weeks prior to production.

16.   The $975 price per barrel for production year 2023 remained unchanged from the Original Agreement. For production year 2024, the price per barrel increased to $1,072.50.

---

[1] Copies of the Original Agreement and Amendment (discussed and defined below) are attached hereto as **Exhibit A**.

COMPLAINT

Accordingly, Precision Wine agreed to pay a total of no less than $321,720 for 300 barrels of bourbon whiskey for production year 2024 (the "**2024 Bourbon**") without a right to modify or terminate the order.

17. In the Amendment UP had the "right to adjust pricing to Purchaser based on price increases that Green River Distilling incurs for grain, barrels, yeast, and utilities." (Amendment, p. 2.)

18. Precision Wine never paid the 10 percent non-refundable prepayment due by January 31, 2023 for the 2024 Bourbon.

19. In March 2024 Green River completed production of the 2024 Bourbon and sent UP an invoice. Earlier in 2024, UP alerted Trevor Sheehan, Precision Wine's Chief Executive Officer, of the imminent production of the 2024 Bourbon and attempted to arrange payment for the order. Ultimately, UP informed Mr. Sheehan that the 2024 Bourbon was ready for delivery and demanded payment. Mr. Sheehan ignored UP's numerous communications and when he finally responded, he refused to pay for the 2024 Bourbon.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

20. Plaintiff repeats and re-alleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

21. The Agreement, comprising the Original Agreement and the Amendment, is valid and enforceable.

22. The express terms of the Agreement require Defendant to pay Plaintiff no less than $321,720 for the 2024 Bourbon.

23. Plaintiff has fully performed all of its obligations under the Agreement by effectuating production of the 2024 Bourbon in accordance with the specifications and manner required by the Agreement.

24. As a direct and proximate result of Defendant's material breach of the Agreement by failing to pay Plaintiff $321,720 for the 2024 Bourbon, Plaintiff has incurred damages in an amount in excess of $321,720, plus, *inter alia*, costs, attorneys' fees, and interest, including prejudgment interest under Connecticut General Statutes § 37-3a(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. For general and special damages of at least $321,720.00, according to proof at trial;

2. For pre- and post-judgment interest;

3. For attorneys' fees and costs of suit to the extent recoverable; and

4. For such other and further relief as the court deems just and proper.

Dated: April 24, 2024

**WINDELS MARX LANE & MITTENDORF, LLP**

**CHAUVEL & GLATT, LLP**

By: *Kenneth M. Weinfield*
      Kenneth M. Weinfield
    Attorneys for Plaintiff Ultra Pure, LLC

COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of any issue herein triable of right by a jury.

Dated: April 24, 2024

**WINDELS MARX LANE & MITTENDORF, LLP**

**CHAUVEL & GLATT, LLP**

By: *Kenneth M. Weinfield*
_____
Kenneth M. Weinfield
Attorneys for Plaintiff Ultra Pure, LLC

# Exhibit A

## Bulk Sales Agreement

**Date:** April 6, 2021 ("Effective Date")

**Purchaser:** Quintum Cellars dba Precision Wine Company
1241 Adams Street #1028
Saint Helena, CA 94574

**Seller:** Ultra Pure, LLC
50 Old Kings Highway North
Darien, CT 06820

**In consideration of the foregoing premises and the respective covenants and agreements contained in this Bulk Sales Agreement (the "Agreement"), Purchaser hereby agrees to purchase from Seller, and Seller hereby agrees to sell to Purchaser based on Seller ability to release the barrels listed below, which is subject to change until confirmation of funds and acceptance from Sellers source of Material, the following (the "Materials"):**

**PRODUCT:** Kentucky Bourbon New Fill
**MASH BILL:** 70% corn, 21% rye, 9% malted barley
**BARRELING PROOF:** 125 proof
**DISTILLERY:** Green River Distilling
10 Distillery Road
Owensboro, KY 42301

**1. PRICE AND PAYMENT TERMS:** Purchaser shall pay Seller, the price as listed in Exhibit A. Purchaser acknolewges their binding commitment to buy the barrels as listed and agreed to in Exhibit A.

**2. DELIVERY:** Title, and, risk of loss shall pass to Purchaser upon Seller's receipt of final payment balance for each production year with respect to the individual quantities of Materials pursuant to the Payment Schedule in Section A. A sorage receipt by Green River Distilling confirming that the inventory has transferrered to the Purchaser from the Seller free of any liens issued at time of final payment.

**3. REGULATORY FILING; COMPLIANCE:** Purchaser is responsible for any and all regulatory filings associated with Purchaser's use of materials. Seller shall transfer the Materials to Purchaser. Any transfer by Seller to Purchaser shall be in bond. As a condition of the foregoing, the parties shall take all necessary actions to complete the transactions in a lawful manner and in compliance with all regulations.

**4. QUALITY:** Seller warrants that the Materials provided by Seller under this Agreement shall conform in all regards to the specifications and quality of the samples previously supplied by Seller to Purchaser (the "**Samples**"). **Seller represents and warrants that the Materials are being sold free of any liens, claims or encumbrances and that the Materials are fit for human consumption and are otherwise unmodified since purchased.** All other warranties, express or implied by statute, or otherwise, are hereby expressly excluded. Any claim by Purchaser which is based on any failure of the Materials to correspond with the Samples shall be notified together with full details thereof to Seller within ten (10) days from the date of discovery of such failure of the Materials to Purchaser. The Materials will be checked in the container and shall not be disgorged if they are believed not to correspond with the Samples. Purchaser shall have an opportunity to inspect the Materials for any defects in their quality. If the Materials do not conform to the Samples, with respect to the non-conforming lot, Seller shall in its absolute discretion be entitled to either replace the defective Materials or refund the invoice price in respect of the defective lot.

**5. REPRESENTATIONS; DISCLAIMER:** PURCHASER REPRESENTS AND WARRANTS TO SELLER THAT PURCHASER IS LEGALLY PERMITTED TO PURCHASE ALCOHOLIC LIQUIDS OF THE TYPE CONTEMPLATED HEREIN, THAT IT SHALL COMPLY WITH ALL APPLICABLE LAWS WITH RESPECT TO THE MATERIALS, AND THAT IT AGREES TO INDEMNIFY AND HOLD SELLER HARMLESS AGAINST ANY LIABILITY, EXPENSES OR OTHER LOSSES INCURRED BY SELLER IN CONNECTION WITH CLAIMS OR PROCEEDINGS ARISING FROM PURCHASER'S BREACH OF THE FOREGOING. PURCHASER REPRESENTS THAT IT HAS RECEIVED ALL NECESSARY CONSENTS, WAIVERS, APPROVALS, OR AUTHORIZATIONS TO ENTER INTO AND FULFILL ITS OBLIGATIONS WITH RESPECT TO THIS AGREEMENT; AND THAT THE SIGNATORY BELOW HAS ALL NECESSARY AUTHORIZATIONS REQUIRED TO ENTER INTO THIS AGREEMENT. SELLER MAKES NO REPRESENTATIONS WITH RESPECT TO THE MATERIALS, WHICH ARE HEREBY SOLD ON AN "AS IS, WHERE IS" BASIS, EXCEPT AS PROVIDED IN PARAGRAPH 5. EXCEPT AS PROVIDED IN PARAGRAPH 5, SELLER DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE MATERIALS.

**6. Storage:** Purchaser shall be solely responsible for the payment of all taxes and duties, including but not limited to excise taxes, imposed on the possession, sale and/or transportation of the Materials subsequent to the transfer of title to the Materials to Purchaser. Purchaser shall execute all documents and provide to Seller all other assistance necessary to demonstrate Seller's release from liability for taxes due, including but not limited to complying with all legal requirements for transfers in bond and providing Supplier with legally-sufficient proof of export. Purchaser agrees to indemnify and hold Seller harmless against any liability, expenses or other losses, other than special or consequential damages, incurred by Seller in connection with claims or proceedings arising from Purchaser's breach of this Section. Should any governmental authority impose any tax on Seller, however labeled, on the Materials subsequent to the transfer of the Materials to Purchaser, Purchaser shall reimburse Seller for the full amount of such tax within thirty (30) days of Seller's payment of such tax if Purchaser authorizes such payment by Seller.

**7. ASSIGNMENT:** The Purchaser shall not assign this Agreement without the prior written consent of the Seller, which shall not be unreasonably withheld.

**8. GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut applicable to contracts made and performed wholly therein without regard to any conflict of laws principles.

**9. LIMITATION OF LIABILITY:** In no event will Seller be liable to Purchaser, nor shall Purchaser be liable to Seller, for any lost profits, lost savings or incidental, indirect, special or consequential damages, arising out of the Materials or the breach of this Agreement, even if advised of the possibility of such damages. In all cases Seller's liability shall not exceed the purchase price of the Materials as set forth in this Agreement.

**10. FORCE MAJEURE:** In the event that either of the parties is unable to carry its normal operations or is compelled to reduce or suspend its operations because of forces beyond its immediate reasonable control, including but not limited to laws, court orders, labor disputes, fire, war, weather, earthquakes or acts of God, the party so affected shall be relieved to that extent from performing its obligations hereunder. In such event, the party unable to perform shall take all reasonable measures to remove the disability and resume full performance at the earliest possible date.

**11. ENTIRE AGREEMENT:** This Agreement sets forth the entire agreement among the parties on the subject matter hereof and supersedes all prior negotiations, understandings and agreements between the parties concerning such subject matter. No amendment or modification of this Agreement will be made except by a writing signed by the party to be bound by such amendment or modification or the successor or assign of such party.

**12. COUNTERPARTS:** This Agreement may be executed in counterparts and by facsimile or electronic signatures, each of which shall be deemed an original and both of which together shall constitute one and the same Agreement.

**13.** **INSURANCE**: Purchaser shall provide and evidence all risk form property insurance for the sales price of the stored materials while in storage and in transit providing a waiver of subrogation in favor of Seller.

*[Signature Page Follows]*

IN WITNESS WHEREOF, THE UNDERSIGNED HEREBY EXECUTE THIS BULK SALES AGREEMENT AS OF THE DATE FIRST INDICATED ABOVE:

Seller: _____

Name: Niels van der Kloot
Title: CEO
Date: 4/14/2021

Purchaser: _____

Name: Trevor Sheehan
Title: CEO
Date: 4/13/21

## Section A – Filling & Payment Schedule

| Fill Date | Barrels | $ Barrel | $ Total |
|---|---|---|---|
| Q1 2022 | 300 | $ 975.00 | $ 292,500.00 |
| Q1 2023 | 300 | $ 975.00 | $ 292,500.00 |
| Q1 2024 | 300 | $ 975.00 | $ 292,500.00 |

**Payment Schedule 2022 Production**

| | | |
|---|---|---|
| 4/30/2021 | $ 29,250.00 | 10% Deposit |
| 30 days prior to filling | $ 131,625.00 | 50% Payment |
| Balance due upon filling | $ 131,625.00 | Balance |
| | $ 292,500.00 | |

**Payment Schedule 2023 Production**

| | | |
|---|---|---|
| 1/31/2022 | $ 29,250.00 | 10% Deposit |
| 30 days prior to filling | $ 131,625.00 | 50% Payment |
| Balance due upon filling | $ 131,625.00 | Balance |
| | $ 292,500.00 | |

**Payment Schedule 2024 Production**

| | | |
|---|---|---|
| 1/31/2023 | $ 29,250.00 | 10% Deposit |
| 30 days prior to filling | $ 131,625.00 | 50% Payment |
| Balance due upon filling | $ 131,625.00 | Balance |
| | $ 292,500.00 | |

## 2023 PRICE AMENDMENT TO
## ULTRA PURE LLC
## WHISKEY SUPPLY AND STORAGE AGREEMENT

THIS 2023 PRICE AMENDMENT TO THE ULTRA PURE LLC SUPPLY AND STORAGE AGREEMENT (this "**2023 Amendment**"), effective as of January 1, 2023 (the "**2023 Effective Date**"), amends the Existing Agreement (as defined below) among Ultra Pure, LLC ("**UP**"), and Quintum Cellars dba Precision Wine Company ("**Purchaser**"). The foregoing entities may be individually referred to as a "**Party**" and collectively as the "**Parties**" in this 2023 Amendment. Capitalized terms used herein and not otherwise defined shall have the meaning assigned to them in the Agreement.

### RECITALS

WHEREAS, the Parties entered into the Ultra Pure LLC Supply and Storage Agreement dated as of April 6, 2021 (the "**Existing Agreement**"); and

WHEREAS, the Parties wish to adjust certain pricing in the Existing Agreement.

### AGREEMENT

In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned parties hereby agree as set forth below.

Section A of the Existing Agreement is replaced with the new Section A hereto and made a part of this Agreement.

Except as modified herein, all other terms and conditions of the Agreement will remain in full force and effect. On and after the 2023 Effective Date, each reference in the Existing Agreement to "this Agreement", "the Agreement", "hereunder" or words of like import will mean and be a reference to the Existing Agreement as amended by this 2023 Amendment.

IN WITNESS WHEREOF, the undersigned have executed this 2023 Amendment to be effective as of the 2023 Amendment Effective Date.

| Ultra Pure LLC | Quintum Cellars dba Precision Wine Company |
|---|---|
| By: _____ | By: _____ |
| Name: Niels van der Kloot | Name: Trevor Sheehan |
| Title: President & CEO | Title: CEO |
| Date: 12/23/2022 | Date: 12/23/22 |

## Section A

**Specifications for Barrels and available Whiskey mash bills**

Green River Distilling will produce Bourbon Whiskey distilled from a grain mash of 70% Corn, 21% Rye, and 9% Malted barley and entered in to new, charred oak 53-gallon barrels at approximately 125 proof alcohol by volume ("Barrels").

**Timing, Quantities, and Pricing***

This is a 3-year contract: 2022 – 2024

Production Schedule and pricing:

| Estimated Production Date | Mashbill | Qty (Barrels) | Price / Barrel* | 10% Prepay** Due | 90% Remaining Balance Due |
|---|---|---|---|---|---|
| Q1 2023 | 21% Bourbon | 300 | $975 | January 31, 2022 | 4 weeks prior to production |
| Q1 2024 | 21% Bourbon | 300 | $1072.50 | January 31, 2023 | 4 weeks prior to production |

* UP reserves the right to adjust pricing to Purchaser based on price increases that Green River Distilling incurs for grain, barrels, yeast, and utilities.

** Prepayments are non-refundable.